**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-24634-Civ-SCOLA/TORRES

ANGELA M. CHAMBERS,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed by Angela M. Chambers ("Plaintiff") [D.E. 17] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner" [D.E. 18] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching her unfavorable decision. Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]   For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 17] should be **DENIED**, Defendant's motion for summary judgment

---

[1]    On August 1, 2019, the Honorable Robert N. Scola referred the parties' cross motions to the undersigned Magistrate Judge for disposition.   [D.E. 16].

[D.E. 18] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## I.        *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was born on April 24, 1958 and has a master's degree.   Plaintiff has worked as an office manager, secretary, and a social worker's assistant.   On July 15, 2014, Plaintiff filed an application for social security benefits, alleging a disability onset date of September 1, 2013.   The Commissioner denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff then requested a hearing before the ALJ that took place on March 23, 2017.

After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on February 6, 2018.   At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2013.   The ALJ found at step two that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, fibromyalgia, carpal tunnel syndrome, mild degenerative joint disease of the bilateral hips, and obesity.   The ALJ also noted that Plaintiff was diagnosed with hypertension, diabetes type II, migraines, and urolithiasis, but found that these health conditions had no limiting factors on her ability to perform basic work activities.   The ALJ then determined that these impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b) with some exceptions.   The ALJ then proceeded to step four and determined that

Plaintiff could perform her past relevant work.  The ALJ relied on the testimony of the VE in making this determination.

Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).  Accordingly, this action is now ripe for disposition.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).   Instead, so long as an ALJ's findings are supported by substantial evidence, they are conclusive, and a court must defer to the ALJ's decision even if the evidence may preponderate against it.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether

substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).   However, no presumption of validity attaches to the Commissioner's conclusions of law.   *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).   A court also reviews an ALJ's decision to determine whether the correct legal standards were applied.   *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   If a decision is supported by substantial evidence, a court must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.   ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The

claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in four ways: (1) that the ALJ improperly discounted the medical opinion of Plaintiff's treating physician, (2) that substantial evidence does not support the ALJ's RFC finding, (3) that the ALJ

failed to properly evaluate Plaintiff's symptoms related to her fibromyalgia, and (4) that substantial evidence does not support the ALJ's conclusion that Plaintiff could perform her past relevant work based on the VE's testimony.   We consider each argument in turn.

### A.   *The ALJ Properly Discounted the Medical Opinion of the Treating Physician*

An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors.   *See id*.   Absent good cause, an ALJ must give a treating[2] physician's opinion substantial or considerable weight.   *See id*. (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).   "When electing to

---

[2]   A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014); *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to [a doctor's] treatment notes, the ALJ discussed the content of [the] notes, showing that the ALJ considered and gave weight to this medical evidence.").

Plaintiff argues that the ALJ erred when she assigned "little weight" to the opinion of her treating physician, Dr. Halperin. In response, Defendant contends that the ALJ had good cause to discount Dr. Halperin's opinion because it was inconsistent with the record.

Dr. Halpern provided his opinion through two questionnaires, one from June

2016 and one from March 2017, which concluded that Plaintiff was disabled.   In her decision, the ALJ assigned this opinion little weight because it was not consistent with the rest of the objective medical evidence.   Specifically, the ALJ noted that Plaintiff's physical examinations showed that Plaintiff only had mild to moderate abnormalities, including normal extremities and normal neck, full upper and lower motor strength, intact coordination, and normal gait.   Plaintiff's argument is therefore unavailing because the ALJ articulated reasons why good cause existed to discount Dr. Halperin's opinion; it was contrary to the rest of the record.

Plaintiff contends, however, that the ALJ "cherry-picked" evidence that supported her conclusion and omitted evidence that favored Dr. Halperin's opinion. In support of this assertion, Plaintiff provides an extensive list of medical evidence that she believes supports Dr. Halperin's opinion, including: light torticollis in Plaintiff's cervical spines and spondylosis and facet arthritis in her lumbar spine; bilateral facet hypertrophy and ligamentum flavum hypertrophy without canal or foraminal stenosis; bilateral facet hypertrophy; right greater than left uncovertebral arthrosis; ligamentum flavum hypertrophy resulting in mild right foraminal stenosis; minimal spine degenerative changes with mild right foraminal stenosis; mild anterolisthesis with flexion; bilateral facet joint disease; minimal cervical spine degenerative changes with mild right foraminal stenosis; tension in the post cervical muscle group; pain on palpation in paraspinal muscles in the lumbar area; pain with internal rotation of the left hip; pain on palpation in the distal phalanges of the hand, with the Heberden nodules being the most tender; uncontrolled blood pressure; and

that Plaintiff was diagnosed with urolithiasis, diabetes mellitus type II, hypertension, degenerative joint disease, osteoarthritis of the cervical spine, tension type headache, tension headaches, chronic lower back pain, and carpal tunnel syndrome.   This argument fails for two key reasons.

First, the ALJ discussed, not omitted as Plaintiff inaccurately claims, some of the medical evidence that Plaintiff lists in her motion.   And the ALJ discussed these pieces of medical evidence when she used them in support on her conclusion that Plaintiff's examinations revealed only mild to moderate symptoms, which were treated conservatively with medication and minimal physical therapy.   Indeed, Plaintiff fails to highlight how any single piece of medical evidence omitted by the ALJ shows that her symptoms were more than mild to moderate.   Simply put, creating a long list of mild to moderate symptoms that can be treated conservatively does not equate to the objective evidence showing Plaintiff was disabled.   Thus, the ALJ did not "cherry pick" evidence that supported her conclusion; she discussed all relevant medical evidence in making her decision.   *See Dyer*, 395 F.3d at 1211.

Second, and most critical, it is not the Court's duty to re-weigh the objective evidence; we need only determine if substantial evidence supports the ALJ's finding. *See Winschel,* 631 F.3d at 1178.   While Plaintiff had limitations caused by her impairments, as the ALJ discussed, the ALJ found that the objective medical evidence was simply inconsistent with the extreme limitations found in Dr. Halperin's two check-box style opinions, and the ALJ created a detailed record supporting that conclusion.   Therefore, there is substantial evidence that the ALJ

had good cause to assign little weight to Dr. Halperin's opinion.  *See Phillips*, 357 F.3d at 1241.

### B. *The RFC Finding is Supported by Substantial Evidence*

An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevance evidence in the record.   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy."   *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted).   The Social Security regulations mandate a narrative discussion of "the individual's ability to perform sustained work

activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, at *6. As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer,* 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959-60) (alteration in original)).

Plaintiff argues that the ALJ's RFC finding, that Plaintiff could perform light work, is not based on substantial evidence because the ALJ discounted all medical opinions of record and did not explain how the medical evidence supported such finding. Both arguments lack any merit.

12

The ALJ did discount the medical opinion of the Stage agency physician, but because the physician stated that Plaintiff could perform *medium* work.   And as previously discussed, the ALJ had good cause to discount the opinion of Dr. Halperin. Plaintiff does not proffer any medical opinion that the ALJ discounted besides Dr. Halperin, so the Court is unsure what Plaintiff means by "all" medical opinions. Regardless, the ALJ had no duty to rely on a physician's opinion in making her RFC finding.   *See Robinson*, 365 F. App'x at 999.   The regulations require such RFC determination to be made by the ALJ at the hearing level.   *See* 20 C.F.R. § 404.1546(c).   Therefore, the ALJ did not discount all medical opinions, and even if she did, she was following the correct legal standards in doing so.

Plaintiff's second argument is based on a false premise, which Plaintiff would realize from a reading of the ALJ's decision.   The ALJ in no way failed to explain how the medical evidence supported her RFC finding; in fact, she created an extensive and fully developed narrative record regarding her RFC finding.   The ALJ's decision, among other things, discusses: each of Plaintiff's physical examinations that showed only mild to moderate physical limitations, her subjective complaints of pain, and that her pain was treatable without surgery, but with medication and physical therapy.   Therefore, the record contains substantial evidence supporting the ALJ's RFC finding.   *See Dyer*, 395 F.3d at 1211 (holding that the record created by an ALJ's decision is sufficient if it enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole.").

Moreover, Plaintiff fails to elaborate what medical evidence would support her

position here.   In fact, Plaintiff's dedicates only three short and generic paragraphs to legal standards, but never articulates a single fact that is relevant here to connect those cases in support of her argument.   Because "[i]ssues raised in a perfunctory manner, without supporting arguments . . . . are generally deemed to be waived," Plaintiff's argument with respect to her credibility is deemed waived.   *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (citations omitted); *see also Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006) ("Outlaw has waived this issue because he did not elaborate on this claim or provide citation to authority about this claim." (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)).

### C.   *The ALJ Properly Evaluated Plaintiff's Symptoms Related to Fibromyalgia*

Plaintiff next argues that the ALJ failed to properly evaluate her subjective symptoms of pain related to fibromyalgia.   Plaintiff argues, essentially, that the ALJ misapplied the pain standard by requiring objective evidence to support her allegations of pain stemming from fibromyalgia.   This is because fibromyalgia is a unique ailment, and its symptoms are entirely subjective.   Further, Plaintiff contends that the Social Security regulations, SSR 12-2p, instructs that certain criteria related to fibromyalgia be evaluated in the five-step sequential evaluation process, and the ALJ failed to do this.   In response, the Commissioner argues (1) that it was not clearly wrong to discredit Plaintiff's subjective complaints of pain because the ALJ discussed more than a lack of objective evidence in her decision; she

discussed inconsistencies in Plaintiff's physical examinations, her prescribed treatment, the effectiveness of such treatment, and her daily activities; and (2) even though the ALJ did not cite to SSR 12-2p, she evaluated its criteria.   We will first discuss the general pain standard and then how it has been applied in situations involving a diagnosis of fibromyalgia.

The pain standard "applies when a disability claimant attempts to establish a disability through [her] own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d at 1210.   When a claimant attempts to establish a disability based on testimony of pain, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so."   *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ."   *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case

record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of a claimant's reports of the severity of her or his condition, an ALJ may examine the extent to which the claimant has sought medical treatment. SSR 96-7p, 1996 WL 374186, at *7. An ALJ may also consider whether tests results in medical records reveal normal findings. *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions, MRI scans were normal, doctors recommended conservative treatments, and claimant could engage in a range of activities). Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding. *See* 20 C.F.R. § 404.1529(c)(3). When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significantly affected"). This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

The Eleventh Circuit has recognized that "unique issues arise when a claimant suffers from fibromyalgia." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863

(11th Cir. 2017).   Fibromyalgia is a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.   Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Davis v. Astrue*, 287 F. App'x 748, 762 (11th Cir. 2008) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004)).

A claimant with fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms."   *Smith v. Berryhill*, 2019 WL 3305184, at *4 (N.D. Ala. July 23, 2019) (quoting *Moore*, 405 F.3d at 1211)).   Because the "hallmark" of fibromyalgia is a "lack of objective evidence," a claimant's subjective complaints may be the only means of determining the severity of the claimant's condition and the functional limitations she experiences.   *Moore*, 405 F.3d at 211.   As a result, courts will reverse an ALJ's determination that a fibromyalgia claimant's testimony was not credible when a lack of objective findings provided the basis for such adverse credibility determination.   *See Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 906 (11th Cir. 2016) (remanding ALJ's decision when the ALJ concluded that a claimant's fibromyalgia symptoms did not limit her ability to work because the record showed that medical treatment was ineffective in alleviating the claimant's pain); *Lane v. Berryhill*, 2017 WL 2797082, at *5 (N.D. Ala. June 28, 2017) ("[T]he ALJ found Ms. Lane's fibromyalgia to be a condition capable of producing some degree of

pain and other disabling symptoms, but not at the level of her claimed severity . . . . In reaching this conclusion, the ALJ provided explicit reasoning, but improperly considered the lack of objective medical evidence and discrepancies within the medical record relating to Ms. Lane's other impairments (dysautonomia, colon problems) to discredit the severity of her subjective testimony relating to fibromyalgia.").

This means that an ALJ's decision must rely on a factual basis for discounting a claimant's testimony regarding his or her subjective symptoms related to fibromyalgia, which can include a lack of proportionality between the Plaintiff's complaints of pain and the objective evidence, as well as inconsistencies in the Plaintiff's statements and actions.   *See Horowitz*, 688 F. App'x at 863 (affirming ALJ in fibromyalgia case because "ALJs are permitted to consider the type of treatment a claimant received in assessing the credibility of her subjective complaints") (citing 20 C.F.R. § 405.1529(c)(3)(iv)-(v)); *Moore*, 405 F.3d at 1212 (finding no reversible error when the ALJ discounted plaintiff's testimony of pain related to fibromyalgia when the ALJ's decision included references to the plaintiff's ability "to drive, provide childcare, bathe and care for herself, exercise, and perform housework); *Smith*, 2019 WL 3305184, at *5 (affirming ALJ when ALJ did not solely rely on a lack of objective findings to deny a plaintiff's disability based on fibromyalgia because the plaintiff maintained a full-time job and regularly exercised, gardened, and worked in the yard).

Here, Plaintiff has established that she suffers from fibromyalgia, and alleges

chronic and widespread pain, precluding her from work.   This includes pain in her right leg and foot, left hip, and low back when walking for a long period of time.   Her back and hip hurt when she stands for about a half-hour, and after about forty-five minutes of sitting she feels numb.   Her pain only allows her to get two and a half to three hours of sleep per night because she feels pain in her right hip and a tingling sensation in her legs and arms.

The ALJ determined, however, that while Plaintiff's medical record supported that Plaintiff had the severe impairment of fibromyalgia and that such impairment could reasonably be expected to cause Plaintiff's alleged symptoms, her testimony regarding the severity of her symptoms was not consistent with other evidence.   The inconsistent evidence considered by the ALJ included Plaintiff's conservative medical treatment, the effectiveness of the medical treatment, and her level of daily activity. Indeed, the ALJ did not solely rely on a lack of objective findings to discredit Plaintiff's testimony regarding the severity of her pain.

In her discussion of Plaintiff's daily activities, the ALJ noted that Plaintiff performed chores, prepared her meals, shopped, managed her own personal hygiene, and walked her dog up to an hour each day.   These inconsistencies in Plaintiff's daily actives versus her allegations of pain provides a factual basis for the ALJ's credibility determination regarding Plaintiff's subjective complaints of pain.   *Compare Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 348-49 (11th Cir. 2005) (affirming ALJ when a plaintiff suffered from fibromyalgia because "the degree of Hennes's complaints also were belied by her testimony that she could shop for groceries and

cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet"), *and Santillo v. Comm'r of Soc. Sec.*, 2010 WL 5697342, at *19 (M.D. Fla. Dec. 28, 2010), *report and recommendation adopted sub nom.*, *Santillo v. Astrue*, 2011 WL 398079 (M.D. Fla. Feb. 2, 2011) (affirming ALJ when the plaintiff was diagnosed with fibromyalgia and the evidence showed that the plaintiff was "able to take care of herself and complete daily living activities such as meal preparation and light household chores.   She was able to pay bills and handle accounts, drive a manual truck, go grocery shopping once a week, and travel out of state"), *with Rutledge v. Barnhart*, 391 F. Supp. 2d 1057, 1061-62 (N.D. Ala. 2005) (finding that the daily living activities of a trip to the beach, the mall, and Walmart not sufficient to discredit a plaintiff's testimony regarding pain related to fibromyalgia).

The ALJ's credibility determination is supported by substantial evidence for a second reason: the ALJ noted that Plaintiff received conservative treatment for her impairments and Plaintiff reported that the treatment alleviated her pain.   *See Horowitz*, 688 F. App'x at 863.   For treatment, the ALJ noted that "treatment for the claimant's body pain has consisted of primarily conservative medication management with few if any recommendations for surgery, pain management, or other more aggressive treatment options that would be expected for pain of the degree alleged." For effectiveness, the ALJ discussed that Plaintiff reported improvement after taking her medication regiment and after completing physical therapy.[3]

---

[3]     Plaintiff asserts that the ALJ also erred by not considering Plaintiff's inability to afford treatment.   This argument lacks any merit for two reasons.   First, the record shows no evidence that Plaintiff declined any treatment in relation to

Because the ALJ evaluated factual evidence related to Plaintiff's daily activities and treatment of pain – and did not solely rely on a lack of objective evidence documenting fibromyalgia – we cannot find that the ALJ errored in discrediting Plaintiff's subjective complaints of pain. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Plaintiff also argues that the ALJ erred by not discussing the criteria outlined in SSR 12-2p. SSR 12-2p first provides criteria for determining if fibromyalgia is a severe impairment. SSR 12-2p, 2012 WL 3104869, at *1-5 (S.S.A. July 25, 2012). Once an ALJ determines that a claimant has the severe impairment of fibromyalgia, SSR 12-2p requires the ALJ to follow the normal five-step sequential process. *See Peterson v. Berryhill*, 2017 WL 1015316, at *3 (M.D. Ala. Mar. 15, 2017) ("If a claimant is found to have an MDI of fibromyalgia, the normal five-step sequential evaluation process is used . . . ."). Moving to the RFC assessment, SSR 12-2p requires the ALJ to consider, a "longitudinal record whenever possible because the symptoms of fibromyalgia can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6.

Because the ALJ determined that Plaintiff suffered from the severe impairment of fibromyalgia, we only consider SSR 12-2p criteria in relation to the

managing her pain resulting from fibromyalgia. Second, even if such additional treatment was recommended and declined, there is no evidence or argument proffered by Plaintiff that she could not afford it.

21

ALJ's RFC finding.[4]  To the extent Plaintiff is arguing that the ALJ erred because she did not apply SSR 12-2p criteria when evaluating whether Plaintiff had the severe impairment of fibromyalgia, her argument is clearly without merit.  *See Christopher v. Colvin*, 2016 WL 4385864, at *7 (N.D. Fla. June 24, 2016) (holding that a claimant's argument that the ALJ had improperly evaluated SSR 12-2p criteria when the ALJ found the claimant to have a severe impairment of fibromyalgia was "simply wrong").

For the RFC assessment, the ALJ concluded that: "In sum, the above RFC assessment is supported by the longitudinal treatment record and the effectiveness of the claimant's treatment and medication regimen."  Additionally, in the decision, the ALJ discussed evidence related to Plaintiff's symptoms of fibromyalgia over the span of a few years, such as trigger points and widespread pain, and noted Plaintiff's testimony related to fibromyalgia.  The ALJ's decision did lack a direct cite to SSR 12-2p; however, the ALJ followed the criteria concerning SSR 12-2p.  *Compare Smith*, 2019 WL 3305184, at *5 (finding that "the ALJ actually examined the 'longitudinal record" because the ALJ discussed the plaintiff's history of subjective pain symptoms in the decision), *with Morgan v. Commissioner*, 2015 WL 1311062, at *7 (M.D. Fla. Mar. 24, 2015) (remanding the ALJ's decision because the ALJ failed to

---

4       Plaintiff's argument regarding SSR 12-2p is muddled because she conflates cases grappling with SSR-12-2p criteria in relation to determining if fibromyalgia is a severe impairment with cases that only discuss SSR-12-2p criteria in relation to RFC assessments.   In addition, Plaintiff makes the Court guess what step of the five-step analysis the ALJ did not discuss SSR 12-2p criteria, but the only logical step here would be the RFC assessment.

evaluate any of SSR 12-2p's criteria).   Put simply, based on the record, the ALJ properly analyzed Plaintiff's fibromyalgia diagnosis in her RFC assessment.

### D. *The VE's Testimony Supports the ALJ's Conclusion that Plaintiff Can Perform her Past Relevant Work*

Finally, Plaintiff argues that the VE's testimony does not provide substantial evidence to support the ALJ's conclusion that Plaintiff could perform her past relevant work.   Specifically, according to Plaintiff, the ALJ failed to incorporate the limitations opined by Dr. Halperin when presenting to the VE the hypothetical if Plaintiff could perform her past relevant work.   In support of Plaintiff's argument, she states that the ALJ need not include information that she does not find credible or supported by the evidence in such hypothetical.   *See Crawford*, 363 F.3d at 1161. We agree with this legal framework, but the facts do not support Plaintiff's argument.

The ALJ did ask the VE a hypothetical: if Plaintiff could perform past relevant work when considering the ALJ's RFC finding.   And this hypothetical omitted Dr. Halperin's opinion.   But, because the ALJ properly discounted the opinion of Dr. Halperin, as discussed previously, the ALJ did not have to include the doctor's opinion in the hypothetical as the ALJ did not find it credible.   Therefore, there is substantial evidence that the ALJ properly relied on the VE's testimony.

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings.   *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212.   The Court therefore finds that the ALJ's conclusions are supported by substantial evidence.

For these reasons, Plaintiff's motion for summary judgment [D.E. 17] is **DENIED** and Defendant's motion for summary judgment [D.E. 18] is **GRANTED**.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.   The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.   For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 17] be **DENIED**, that Defendant's motion for summary judgment [D.E. 18] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 29th day of April, 2019.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge